UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                :

JAMES WINN, Derivatively on behalf of  :
SCOTTISH RE GROUP LTD,                 :

                                :

            Plaintiff,             :

                                :

     - against -                :

                                :

GLENN S. SCHAFER, MICHAEL     :
AUSTIN, WILLIAM CAUFIELD-    :
BROWN, ROBERT M. CHMELY, JEAN- :
CLAUDE DAMERVAL, MICHAEL C.   :
FRENCH, PAUL GOLDEAN, JEFFREY :
P. HUGHES, NORMAN LAMONT,    :
HAZEL R. O'LEARY,                :

                                :

           Defendants,          :

                                :

     -and-                   :

                                :

SCOTTISH RE GROUP LTD,            :

                                :

           Nominal Defendant.   :

                                :
------------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/7/07

OPINION AND ORDER

06 Civ. 10170 (SAS)

     This is a shareholder derivative action brought by James Winn

("plaintiff") on behalf of Scottish Re Group Ltd. ("Scottish Re" or the

"Company") against certain of Scottish Re's officers and directors for breach of

fiduciary duties arising out of alleged misrepresentations as to the Company's

business and false financial reports in violation of United States securities laws.

Scottish Re, the nominal defendant in this action, moved to dismiss plaintiff's

Verified Shareholders' Derivative Complaint (the "Complaint") on the ground that

plaintiff lacks standing to bring this derivative action. For the reasons discussed

below, Scottish Re's motion is granted and the Complaint is dismissed without

prejudice.

## I.    BACKGROUND

### A.    Facts

Scottish Re is an international reinsurance company incorporated in

the Cayman Islands. Plaintiff is a shareholder of Scottish Re. Defendants are

comprised of certain of Scottish Re's officers and directors (the "Individual

Defendants"). In the Complaint, plaintiff alleges that the Individual Defendants

breached their fiduciary duties arising out of the same conduct that is the subject

of a consolidated securities action pending before this Court. Because the details

of the underlying conduct are not material to this motion to dismiss for lack of

standing, I shall only briefly summarize the allegations in the Complaint.[1]

---

[1]    Plaintiff devotes eighteen of its thirty-eight-page Complaint to
quoting in full Scottish Re's various press releases and financial reports made
throughout the course of over a year. Neither plaintiff nor Scottish Re aided the
Court by providing a summary of the allegations in the memoranda of law.

-2-

From February 17, 2005 through July 28, 2006, the Individual Defendants caused Scottish Re to issue press releases and financial reports that plaintiff alleges were materially misleading. Specifically, during that period, the Individual Defendants reported hundreds of millions of dollars in deferred tax assets in Scottish Re's financial statements and certified the Company's compliance with GAAP, which sets standards for maintaining deferred tax assets on a company's balance sheet — all of which plaintiff alleges was illegal and a breach of fiduciary duty.

On July 31, 2006, however, the Company announced that it would suffer a net operating loss of approximately $130 million for the second quarter ended June 30, 2006, due principally to an unexpected $112 million tax valuation allowance on deferred tax assets. The Company also announced at the same time the resignation of Scottish Re's CEO, Scott Willkomm.

Immediately following these announcements, the price of Scottish Re stock declined by seventy-five percent on high trading volume. Rating agencies also immediately downgraded the credit rating of Scottish Re from A- to BBB+, which placed the Company's ability to conduct its business in serious jeopardy.

**B.    Procedural History**

Beginning in August 2006, a series of putative securities class actions

were filed against Scottish Re and certain individual defendants. In October 2006, this Court consolidated the cases and appointed a lead plaintiff and lead counsel. The lead plaintiff subsequently filed a consolidated class action complaint alleging securities law violations by Scottish Re and various other defendants, including current and former officers and directors of the Company arising out of misrepresentations concerning the Company's deferred tax assets and internal controls.

On or about October 19, 2006, this putative derivative action was filed, alleging much of the same misconduct as alleged in the securities action. On January 8, 2007, Scottish Re moved to dismiss the Complaint for lack of standing.

## II.    LEGAL STANDARD

### A.    Choice of Law

This Court has subject matter jurisdiction over this case under section 1332 of title 28 of the United State Code based on diversity of citizenship and an amount in controversy that exceeds seventy-five thousand dollars. In diversity actions, federal courts apply the substantive law as determined by the choice of law rules of the forum state.[2] New York choice of law rules apply the internal

_____

[2]      *See American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997). *See also Solow v. Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998).

affairs doctrine, which dictates that the law of the state of incorporation governs the adjudication of a corporation's "'internal affairs,' including questions as to the relationship between the corporation's shareholders and its directors."[3]  The parties agree that, because Scottish Re was incorporated in the Cayman Islands, Cayman Islands law should govern plaintiff's claims of breach of fiduciary duty.[4] Where the parties agree to the application of a certain forum's law, "their consent concludes the choice of law inquiry."[5]  In any event, under New York choice of law rules, Cayman Islands law applies.

There is also no dispute that where Cayman Islands law is silent, Cayman Islands courts look primarily to English common law for guidance.[6] Because Cayman Islands law is silent in the area of shareholder derivative actions,

---

[3]     *Galef v. Alexander*, 615 F.2d 51, 58 (2d Cir. 1980).  *Accord Seybold v. Groenink*, No. 06 Civ. 772, 2007 WL 737502, at *5 (S.D.N.Y. Mar. 12, 2007); *Solow*, 994 F. Supp. at 177.

[4]     *See* Memorandum of Law in Support of Nominal Defendants Scottish Re Group Ltd's Motion to Dismiss Plaintiff's Verified Shareholders' Derivative Complaint Pursuant to Rule 12(b)(1) ("Scottish Re Mem.") at 4; Derivative Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 3.

[5]     *American Fuel*, 122 F.3d at 134.

[6]     *See* Scottish Re Mem. at 4-5; Pl. Mem. at 3.

English common law provides the relevant applicable law in this case.[7] Finally,

although Cayman Islands and English substantive law applies in this action,

federal law governs procedural issues.[8]

### B.    Motion to Dismiss

#### 1.    In General

##### a.    12(b)(1)

Rule 12(b)(1) provides for the dismissal of a claim when the federal

court "lack[s] . . . jurisdiction over the subject matter."  Plaintiff bears the burden

of establishing subject matter jurisdiction by a preponderance of the evidence.[9]  "A

---

[7]      *See* Declaration of Aristos Galatopoulos (Cayman Islands attorney)
¶¶ 6-7.

[8]      *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427
(1996) ("[F]ederal courts sitting in diversity apply state substantive law and
federal procedural law.").  *See also Hogan v. Wal-Mart Stores, Inc.* 167 F.3d 781,
783 (2d Cir. 1999) ("Defendant is correct that we must apply New York
'substantive' law to this diversity case.  In matters of 'procedure,' however,
federal law governs." (citing *Gasperini*, 518 U.S. at 427, and *Erie R. Co. v.
Tompkins*, 304 U.S. 64 (1938))).

[9]      *See Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002). *See also
Goonewardena v. New York*, No. 05 Civ. 8554, 2007 WL 510097, at *6 (S.D.N.Y.
Feb. 14, 2007) ("[T]he burden of demonstrating that the court has subject matter
jurisdiction over the case falls on the plaintiff as it is the plaintiff who seeks to
invoke the court's jurisdiction.").

court must decide a 12(b)(1) motion before other motions to dismiss."[10]

In considering a motion to dismiss for lack of subject matter jurisdiction, the court must assume the truth of the material factual allegations contained in a complaint.[11] However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."[12] In fact, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits."[13]

### b.    12(b)(6)

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of

---

[10]    *Integrated Utils. Inc. v. United States*, No. 96 Civ. 8983, 1997 WL 529007, at *2 (S.D.N.Y. Aug. 26, 1997). *Accord Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." (quotation omitted)).

[11]    *See Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citing *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004)).

[12]    *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citing *Norton v. Larney*, 266 U.S. 511, 515 (1925)).

[13]    *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

his claim which would entitle him to relief.'"[14]  The task of the court is "merely to

assess the legal feasibility of the complaint, not to assay the weight of the evidence

which might be offered in support thereof."[15]  When deciding a motion to dismiss

under Rule 12(b)(6), courts "accept all factual allegations as true and draw all

reasonable inferences in plaintiff's favor."[16]  "[W]hile the pleading standard is a

liberal one, bald assertions and conclusions of law will not suffice."[17]  "Generally,

consideration of a motion to dismiss under Rule 12(b)(6) is limited to

consideration of the complaint itself."[18]  Although the plaintiff's allegations are

taken as true, "the claim may still fail as a matter of law if it appears beyond doubt

that plaintiff can prove no set of facts in support of its claim which would entitle it

---

[14]    *Faulkner v. Beer*, 463 F.3d 130, 133 (2d Cir. 2006) (quoting *Twombly v. Bell Atl. Corp.*, 425 F.3d 99, 106 (2d Cir. 2005)). *Accord Jones v. Bock*, — U.S. —, 127 S. Ct. 910, 920 (2007) ("A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.").

[15]    *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004) (quotation omitted).

[16]    *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[17]    *Amron v. Morgan Stanley Inv. Advisors, Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) (quotation omitted).

[18]    *Faulkner*, 463 F.3d at 134.

to relief, or if the claim is not legally feasible."[19]

### 2.      Motion to Dismiss for Lack of Standing to Bring a Derivative Action

Under English law, whether Winn is a proper plaintiff to bring suit on behalf of Scottish Re is a question of standing.[20]  The case law, however, is unclear as to whether standing to bring a derivative action is analyzed under Rule 12(b)(1) or 12(b)(6).  In *In re Tyco International Ltd.*, the court analyzed the motion to dismiss for lack of standing under Rule 12(b)(1) because "American courts . . . generally view standing as a component of subject matter jurisdiction."[21]  In *Seghers v. Thompson*, by contrast, the court applied, without discussion, the Rule 12(b)(6) standard.[22]  Although I tend to agree with the *Tyco* court on this point, the distinction between 12(b)(1) and 12(b)(6) is immaterial in this case because the Court is not required to make any jurisdictional findings of fact in reaching its determination as to plaintiff's standing to bring this action.

---

[19]      *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 459 (S.D.N.Y. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006)).

[20]      *See In re Tyco Int'l, Ltd.*, 340 F. Supp. 2d 94, 96-97 (D.N.H. 2004).

[21]      *Id.* at 97.

[22]      *See Seghers v. Thompson*, No. 06 Civ. 308, 2006 WL 2807203, at *1 (S.D.N.Y. Sept. 27, 2006).

Plaintiff's Complaint must be dismissed under either Rule.

### 3.    Leave to Replead

Whether to permit a plaintiff to amend his pleadings is a matter committed to the Court's "sound discretion."[23]  Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."[24]  Moreover, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead."[25]  Leave to replead should be denied, however, where the proposed amendment would be futile, if there is undue delay, bad faith, or dilatory motive, or where the opposing party would suffer undue prejudice.[26]  Leave to amend "will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim."[27]

---

[23]     *McCarthy v. Dun & Bradstreet Corp.*, No. 05-3828-cv, 2007 WL 967937, at *13 (2d Cir. Mar. 29, 2007).

[24]     Fed. R. Civ. P. 15(a).

[25]     *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).

[26]     *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002). *See also Cortec Indus.*, 949 F.2d at 48 ("[W]here a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").

[27]     *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001).

## C.   Standing in Derivative Actions[28]

Under English law, derivative actions are governed by the rule in

*Foss v. Harbottle* ("*Foss*").[29] That rule provides that derivative claims are owned

and controlled by the company, not its shareholders, and that a shareholder is not

---

[28]      Scottish Re has submitted in the form of a declaration the opinion of
an English law expert, Timothy James House, a solicitor and partner at Allen &
Overy LLP in London, England ("House Declaration"). Plaintiff has not
submitted any expert testimony. Plaintiff objects to the court's consideration of
the House Declaration, arguing that a foreign law expert may not opine as to the
"ultimate application of the (foreign) law to the facts of the case." Pl. Mem. at 3
(citing *Krish v. Balasubramaniam*, No. 1:06-CV-01030, 2006 WL 2884794 (E.D.
Cal. Oct. 10, 2006)). Under Rule 44.1, however, "[t]he court, in determining
foreign law, may consider any relevant material or source, including testimony,
whether or not submitted by a party or admissible under the Federal Rules of
Evidence." Fed. R. Civ. P. 44.1. A court may thus consider a foreign law expert's
opinion even on ultimate legal conclusions. *See* Fed. R. Civ. P. 44.1 Advisory
Committee Note (noting that the rule was designed to avoid the fact that the
ordinary rules of evidence "have in the past prevented examination of material
which could have provided a proper basis for the determination. The new rule
permits consideration by the court of any relevant material, including testimony,
without regard to its admissibility under Rule 43 [and thus, the Federal Rules of
Evidence]."). A court, however, is not required to consider or follow that opinion,
and indeed is permitted to conduct its own research into the foreign law. *See id.*
(noting that under the rule, "the court is not limited by material presented by the
parties; it may engage in its own research and consider any relevant material thus
found"). While I have considered the House Declaration, I have independently
reached the legal conclusions herein.

[29]      2 Hare 461 (Eng. 1843).

permitted to bring a derivative action on behalf of that company.[30]   There are four

recognized exceptions to the rule in *Foss* that would permit a shareholder to bring

a derivative action:  (1) if the conduct infringed on the shareholder's personal

rights; (2) if the conduct would require a special majority to ratify; (3) if the

conduct qualifies as a "fraud on the minority"; or (4) if the conduct consists of

*ultra vires* acts.[31]   There is no dispute that the first and second exceptions are not

at issue in this case.

### 1.    Fraud on the Minority

In order to invoke the fraud on the minority exception, the

shareholder derivative plaintiff must plead and prove each of the following: *first*,

---

[30]      *See id.  See also Seghers*, 2006 WL 2807203, at *4 (applying *Foss*);
*Tyco*, 340 F. Supp. 2d at 98 (same).  There is also a related rule, which states that a
shareholder may not bring a derivative claim to complain of an irregularity (as
distinct from an illegality) if it can be cured by a shareholder vote.  *See, e.g.*,
*Prudential Assurance Co. Ltd. v. Newman Indus. Ltd. (C.A.)*, [1981] Chapter 5
(Eng. 1979).  The acts complained of here are alleged to be illegalities, not
irregularities; thus, this related rule is not at issue.

[31]      *Tyco*, 340 F. Supp. 2d at 98.  The *Tyco* court noted that there has been
some suggestion that the exceptions are not exceptions at all, but rather examples
of conduct on which a derivative action may be brought under the related general
rule, *see supra* n.30, namely, conduct that could not be ratified by a simple
majority, or, in the case of the first exception, an example of conduct that gives
rise to an individual action as opposed to a derivative action.  *See id.*  Like the
*Tyco* court, however, I will "follow the conventional approach and analyze them
as exceptions."  *Id.*

the "alleged wrongdoers must have 'control' over a majority of the stock with

voting rights," and *second*, those wrongdoers "must have committed 'fraud.'"[32]

"[A] corporation's board of directors will be deemed to have control of a majority

of the corporation's voting shares for purposes of the fraud on the minority

exception if the evidence demonstrates that it has acquired *de facto* control."[33]

"Fraud" as interpreted under English law in this context differs from the American

definition of fraud insofar as English law requires that there be self-dealing by the

alleged wrongdoers.[34] "[F]raud is not present unless the alleged wrongdoer has

benefitted at the company's expense as a result of his misconduct."[35]

### 2.     *Ultra Vires*

"[W]hen a shareholder seeks to bring a derivative action to recover

damages for past *ultra vires* acts, the shareholder must demonstrate that the case

qualifies under the fraud on the minority exception."[36]  Thus, the two exceptions

collapse into one where the allegations relate only to past acts.

---

[32]     *Id.*

[33]     *Id.* at 99.

[34]     *See Seghers*, 2006 WL 2807203, at *4; *Tyco*, 340 F. Supp. 2d at 99.

[35]     *Tyco*, 340 F. Supp. 2d at 99 (citing English and Bermuda case law).

[36]     *Id.* at 102.

## III.   DISCUSSION

Two recent district court cases have squarely addressed the issues raised in this motion.  In October 2004, in *Tyco*, the District of New Hampshire dismissed a shareholder derivative complaint for lack of standing under English law, holding that the plaintiff "failed to demonstrate that her case comes within an exception to the rule in *Foss v. Harbottle*."[37]  Likewise, in September 2006, in *Seghers*, this Court dismissed a shareholder derivative complaint for lack of standing under English law, holding that the "derivative claims are precluded because the proper plaintiff for a wrong done to [a] company is the company itself" under the rule in *Foss* to which no exception could be applied.[38]

### A.   Standing

Scottish Re argues that plaintiff lacks standing here because he does not fall within any of the *Foss* exceptions.  Plaintiff counters that he need not meet any of the exceptions because he has standing under the *Foss* rule itself.  Specifically, plaintiff argues that because the alleged misconduct could not have been ratified by a shareholder vote, plaintiff's suit is expressly permitted under the rule.  Plaintiff is relying not on the general *Foss* rule, but on the related rule that

---

[37]   *Id.* at 103.

[38]   *Seghers*, 2006 WL 2807203, at *4 (quotation omitted).

-14-

shareholder derivative actions may not be maintained to challenge irregularities

that may be ratified by a shareholder vote.  Plaintiff argues that the inverse of that

rule is also true — that whenever the alleged misconduct cannot be ratified by a

shareholder vote, a shareholder derivative action may be brought.  However, that

is not a correct statement of English law.  Even in cases involving alleged

illegalities that cannot be ratified by a shareholder vote, a plaintiff still must

demonstrate that he meets the specific requirements of one of the well-established

*Foss* exceptions in order to have standing to bring suit.[39]

### 1.    Fraud on the Minority

Other than a bald assertion of unjust enrichment in part through

"illegal insider stock sales,"[40] plaintiff does not allege that any (or which) of the

Individual Defendants are shareholders of the Company.  Moreover, the

Complaint fails to allege that these defendants hold a controlling number of the

company's shares or that they exercise *de facto* control over those shares.  Indeed,

---

[39]    As mentioned above, only two of the four exceptions are relevant to this case, the fraud on the minority exception and the *ultra vires* exception.  There has been some discussion in the case law of a "fifth" exception for cases in which the interests of justice require a derivative action to proceed.  *See, e.g., Tyco*, 340 F. Supp. 2d at 102.  Because neither party has raised that issue, however, it requires no further discussion.

[40]    Complaint ("Compl.") ¶ 74.

plaintiff's own allegations prove the opposite.  The Complaint states that "[a]

majority of Scottish Re's outstanding shares are owned by U.S. investors"[41] and

that "Scottish Re is a publicly traded company with millions of shares outstanding

. . . [which] were held by thousands of shareholders located throughout the nation

and abroad."[42]  Thus, taking the allegations of the Complaint as true, these

Individual Defendants do not hold a controlling number of the Company's shares.

These allegations also belie any claim that the Individual Defendants could

exercise *de facto* control over the millions of shares held by thousands of

unidentifiable shareholders.[43]  Plaintiff's allegations that the Individual

Defendants control the Company itself are inapposite.

Nor does plaintiff allege conduct sufficient to establish the requisite

self-dealing in order to invoke the fraud on the minority exception.  Plaintiff

alleges that the Individual Defendants "receive substantial salaries, bonus

payments, benefits, and other emoluments by virtue of their membership on the

Board and their control of Scottish Re.  They have thus benefitted from the wrongs

---

[41]     *Id.* ¶ 8.

[42]     *Id.* ¶ 52(a).

[43]     *See id.* ¶ 52(b) and (c) (stating that even "assuming all shareholders
could be individually identified," it would be "impossible" for plaintiff to track
them down to make a demand).

herein alleged and have engaged therein to preserve their positions of control and

the perquisites thereof . . . ."[44] Those allegations, however, are precisely the type

of allegations that were found to be insufficient in *Tyco*[45] and which are

consistently found to be insufficient to prove director self-interest in the analogous

context of derivative actions applying American law.[46] Plaintiff does not allege

any additional benefits that inured to the Individual Defendants "beyond the

normal emoluments of office."[47] Thus, plaintiff cannot establish either of the

requirements to invoke the fraud on the minority exception.

### 2.   *Ultra Vires*

Plaintiff argues that the illegal acts alleged in the Complaint

constitute *ultra vires* acts sufficient to overcome the proscription against

shareholder derivative actions under *Foss*. The allegations of such illegal acts in

the Complaint, however, all relate to past conduct. As a result, in order to invoke

the *ultra vires* exception, plaintiff must meet the requirements of fraud on the

minority. Because plaintiff cannot establish fraud on the minority, his attempt to

---

[44]    *Id.* ¶ 51(e).

[45]    *See Tyco*, 340 F. Supp. 2d at 100.

[46]    *See, e.g., Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).

[47]    *Tyco*, 340 F. Supp. 2d at 100 n.7.

resort to the *ultra vires* exception is equally unavailing. Thus, plaintiff's

Complaint must be dismissed for lack of standing under *Foss*.

### B.     Leave to Replead

Plaintiff neglected to request leave to replead in the event his

Complaint is dismissed. Plaintiff neglected to do so even in the face of Scottish

Re's argument in its opening memorandum that leave should be denied if

requested.[48] As stated above, however, "[it] is the usual practice upon granting a

motion to dismiss to allow leave to replead."[49] Thus, despite plaintiff's

negligence, plaintiff may replead within twenty days of this Opinion and Order.

However, no amended complaint should be filed unless plaintiff and his counsel

reasonably believe that the deficiencies identified in this Opinion can be

addressed.

---

[48]     *See* Scottish Re Mem. at 8.

[49]     *Cortec Indus.*, 949 F.2d at 48.

## IV.   CONCLUSION

For the reasons discussed above, Scottish Re's motion to dismiss is granted in its entirety.  The Complaint is dismissed without prejudice.  Plaintiff may replead within twenty days of the date of this Opinion and Order.  The Clerk of the Court is directed to close this motion [No. 5 on the Docket Sheet].

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            May 7, 2007

## - Appearances -

**For Plaintiff:**

Curtis V. Trinko, Esq.
Jeffrey B. Silverstein, Esq.
Wai K. Chan, Esq.
Law Offices of Curtis V. Trinko, LLP
16 West 46th Street, 7th Floor
New York, NY 10036
(212) 490-9550

Maya Saxena, Esq.
Joseph E. White III, Esq.
Christopher S. Jones, Esq.
Saxena White P.A.
2424 N. Federal Highway, Suite 257
Boca Raton, FL 33431
(561) 394-3399

Peter A. Lagorio, Esq.
Steven M. Taylor, Esq.
Lynda C. Paris, Esq.
Law Office of Peter A. Lagorio
63 Atlantic Avenue
Boston, MA 02110
(617) 367-4200

**For Nominal Defendant:**

Lyle Roberts, Esq.
George Anhang, Esq.
Evan M. Rosen, Esq.
LeBoeuf, Lamb, Greene & MacRae LLP
1875 Connecticut Avenue, N.W., Suite 1200
Washington, D.C. 20009
(202) 986-8000